[Civ. No. 9548. First Appellate District, Division Two.—August 6, 1935.]

MADELINE COWAN, Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation), Appellant.

Wm. Abbott, Walter H. Linforth and Wm. M. Cannon for Appellant.

M. Mitchell Bourquin for Respondent.

NOURSE, P. J.—This is an action to recover damages for injuries alleged to have been received in a collision between plaintiff's automobile and a street car operated by defendant. The jury returned a verdict for plaintiff in the sum of $18,000. On the hearing of the motion for a new trial the court, with plaintiff's consent, reduced the judgment to $7,000 and denied the motion. Defendant appeals from the judgment.

Much of the evidence is conflicting, but as we must resolve every conflict in favor of the verdict our statement of facts will recite the evidence in the light most favorable to the plaintiff. Plaintiff was driving south on Forty-third Avenue in the city and county of San Francisco, and the street car was going west on Fulton Street, which is an arterial. The plaintiff and other witnesses testified that she stopped at the arterial; there was other testimony that she was going fast on Forty-third Avenue and merely slowed at the intersection. She first saw the street car when she came to the intersection and the car had then not reached Forty-second Avenue. She testified that as she started up again the street car was at Forty-second Avenue and she did not know whether it was moving or standing. She proceeded at the rate of about

six miles per hour and did not see the car again until her front wheels were on the northerly track and the car was almost upon her. Her automobile was struck on the left front side, shoved off the tracks but not overturned, and the street car went from three-quarters of a block to a block before it stopped. Various witnesses estimated the speed of the street car at between 12 and 15 miles per hour and between 40 and 45, depending upon their interest in the litigation. In all cases the speeds mentioned were said to be the usual speed of street cars at this particular place. Plaintiff drove over this intersection almost daily on her way to work, knew that the cars went fast, and testified that when she first saw the car it seemed to be going at a normal rate of speed. The intersection was an "obstructed" one on a closely built-up street in a residential district. The street car approached the intersection without giving any warning by bell or other signal.

█ Upon this evidence respondent argues that the jury was justified in finding that appellant was negligent and that she used reasonable care and that, though the alleged excessive speed of the street car was not noticed, she had the right to assume, after looking once, that appellant would act within the law and approach the intersection in a prudent manner. We are satisfied, without further repetition of the evidence, that it is sufficient to support the verdict on these two issues. █ This controls the appeal as to these issues under the settled rule recently followed in *Crawford* v. *Southern Pac. Co.*, 3 Cal. (2d) 427 [45 Pac. (2d) 183], where the court said: "In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court."

In compliance with the rules of court appellant's brief contains a statement of six questions as those involved on the appeal. Three of these are merely restatements of the same issue—the right of way on an arterial or boulevard; two are restatements of a related issue—the application of speed limits on arterials; the sixth presents the question of respondent's asserted contributory negligence. The questions relating to the right of way and to the speed limits on arterials are argued under assignments of error to instructions given and to instructions proposed by the appellant and refused. It would serve no good purpose to quote at length either the instructions complained of or those refused. They all relate to the one theory advanced by the appellant—that, because Fulton Street was designated as an arterial, the appellant had the "right of way". This may be granted but, in doing so, we do not concede the result which appellant insists should follow. ■ The decisions are uniform that all speed regulations are referable to the primary demand that all vehicles shall be operated at "a careful and prudent speed not greater than is reasonable and proper" and that they shall not be operated in such a way "as to endanger the life, limb or property of any person". (Calif. Vehicle Act, Deering's Gen. Laws, Act No. 5128, sec. 113.) Thus the so-called statutory speed limits are merely directory and, though a speed in excess of such limits may be made *prima facie* evidence of negligence, it is not conclusive evidence and that is as far as these instructions went.

■ But appellant's theory that it had an absolute and uncontrolled right of way over all vehicles approaching the arterial is not supported by any authority cited. "Right of way" merely means a preference to one of two vehicles asserting the right of passage at the same place and at *approximately* the same time. It was never intended that a vehicle should be charged with negligence *"per se"* if it attempted to cross an arterial when any other vehicle was approaching on the arterial at any distance whatever. Again emphasizing that negligence is the subject-matter of the inquiry the question reverts to the simple matter of what is negligence, or what would a reasonable person do under the circumstances. If the jury determines that a reasonable person might cross an arterial when a street car is seen ap-

proaching a block distant then all the niceties of court instructions become purely academic. We had the same question before us in *Keyes* v. *Hawley,* 100 Cal. App. 53 [279 Pac. 674], and there held that the "right of way" rules of the road only applied when two vehicles approached the point of intersection at approximately the same time so that, if both continued on at a lawful speed *and in a prudent manner,* a collision would occur. On page 60 we said, " . . . when one car has actually entered an intersection before the other approaches it the driver of the first car may assume that he will be given the right of way and permitted to pass through the intersection without danger of collision. He has the right to assume that the driver of the other car will obey the law, slow down and yield the right of way if slowing down is necessary to prevent a collision. (*Harris* v. *Johnson,* 174 Cal. 55, 58 [161 Pac. 1155, Ann. Cas. 1918E, 560, L. R. A. 1917C, 477]; *Wixon* v. *Raisch Improvement Co.,* 91 Cal. App. 129 [266 Pac. 964].)" Later authorities to the same effect are *Couchman* v. *Snelling,* 111 Cal. App. 192, 195 [295 Pac. 845]; *Page* v. *Mazzei,* 213 Cal. 644, 645 [3 Pac. (2d) 11]; *Leblanc* v. *Coverdale,* 213 Cal. 654, 658 [3 Pac. (2d) 312].

Under the facts proved respondent entered the intersection when appellant's street car was a block distant (270 feet)— so far away that she was unable to say whether it was moving or standing still. The authorities cited effectively dispose of the argument that, under such conditions, the street car had the right of way and as effectively compel the conclusion that the question of respondent's contributory negligence was one of fact to be left to the jury.

In the matter of the limits of speed the trial court instructed the jury that, under the municipal traffic ordinance, it was lawful to operate the street car at a speed not in excess of fifteen miles an hour when traversing the intersection and that speed in excess of this was "*prima facie* but not conclusive evidence of a speed greater than is reasonable and proper". The ordinance was received in evidence without objection and the particular sections relating to speed of street cars were read to the jury without objection. In the instructions complained of the trial court strictly followed the terms of the ordinance. But the appellant argues that these instructions should not have been given

because these provisions of the ordinance are inapplicable to traffic on an arterial. *Gritsch* v. *Pickwick Stages System*, 131 Cal. App. 774 [22 Pac. (2d) 554], is cited as authority for this position, but we do not so understand that decision. The rates of speed found in the California Vehicle Act were there considered in relation to the provisions relating to boulevards and arterials and it was held that the rates of speed were directory and must give way to specific provisions covering the boulevards and arterials. It was not held, however, that none of these speed regulations were applicable to travel on a boulevard, but it was said in clear language, at page 781, that "any person driving a vehicle on an established through highway or boulevard which is appropriately marked with stop-signs at intersections is not necessarily required to reduce his speed at those intersections to fifteen miles an hour under the provisions of subdivision (b) of section 113, but that his rate of speed (unless governed by local regulations) is controlled by subdivision (a) of that section—that which is 'not greater than is reasonable and proper'. Thus when one who is driving on such a highway is involved in a collision at an intersection and the question of his negligence relates to the rate of speed at which he was driving, the jury should be properly instructed to determine whether such rate of speed was greater than was reasonable and proper under the circumstances, and also whether the speed maintained was a proximate cause of the accident". Here the matter of speed was expressly "governed by local regulations" and the trial court fully instructed the jury with the care suggested in the quotation.

■ Appellant uses the same authority in support of his criticism of an instruction that the operator of the street car should "anticipate the presence on the public street of other persons *exercising ordinary care*". This is far different from the instruction criticised in the Gritsch case, which advised the jury that the operator of the stage should anticipate that other vehicles would enter the boulevard "in violation of law". Without further elaboration we are satisfied from our examination that the jury was fully and fairly instructed on all these issues and that the able trial judge did not err in the refusal to give any of those proposed by the appellant.

■ We have covered all the questions stated by appellant to be involved on this appeal, but appellant's brief discusses other questions which will require brief comment. The elementary principle that a street car traveling on fixed rails must have the right of way over other movable traffic may be conceded, but it has no application to the facts of this case. The repetition of the arguments on the issues of negligence and contributory negligence is answered by what we said in the beginning. ■ Respondent's witnesses placed her at the intersection of Forty-third Avenue when the street car was at Forty-second. Appellant's motorman testified that he saw the respondent approach the intersection and that "she did not stop at the arterial sign". If the jury believed respondent's witnesses the charge of contributory negligence falls; if the jury believed the motorman then his negligence is established, because the only conclusion which could follow is that, after he saw that respondent would be in a place of extreme danger, he deliberately operated the street car at such an excessive and reckless speed that he could not avoid the injury.

The criticism of the evidence and the instruction relating to respondent's loss of profits from her business is answered by *Hollander* v. *Wilson Estate Co.*, 214 Cal. 582, 587 [7 Pac. (2d) 177].

■ The criticism of the instruction relating to damages for aggravation of a preexisting disease is without merit. The evidence was conclusive that respondent was suffering from an infection of the colon at the time of the accident and developed chronic ulcerative colitis as a result of the injury. No claim is made that the verdict, as reduced by the trial court, is an excessive award for the permanent injuries alone suffered by the respondent.

No other point discussed in the briefs requires consideration.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 3, 1935.