[Civ. No. 3706. Fourth Dist. Feb. 24, 1949.]

J. B. HUFFMAN et al., Appellants, v. LOREN VOTH, Respondent.

Schmidt & Catalano for Appellants.

Mack & Bianco for Respondent.

BARNARD, P. J.—This is an appeal from a judgment of dismissal after the granting of a motion for a nonsuit. The

action was one for damages arising out of the collision of two automobiles which occurred on July 12, 1946, at the intersection of Central Avenue and Jackson Street, two country roads near Wasco. Central Avenue runs north and south and Jackson Street runs east and west. Each road was 40 feet wide between property lines and each had an oiled roadway in the center about 16 feet wide, with dirt shoulders 2 to 4 feet wide on either side. There was no stop sign at any corner of this intersection and no white line on either street. There was a house on the southeast corner of the intersection and a cowpen on the southwest corner. There was a 20-acre plowed field on the northwest corner and a 40-acre plowed field on the northeast corner. Neither field was fenced and there was nothing on the 40-acre field to obstruct the view of a driver approaching the intersection from the north or one approaching the intersection from the east.

At about 5:30 p. m. on the day in question the plaintiff Huffman, driving a Chevrolet sedan owned by the plaintiff Van Eman, was driving west on Jackson. He had stopped at a point 300 feet east of this intersection and was proceeding at a speed of approximately 20 miles an hour. At the same time the defendant was traveling south on Central at a speed of 60 miles an hour. The vehicles collided in the northwest corner of the intersection at a point when the rear of the Chevrolet was 23 feet west of the east property line of Central, as extended, and 15 feet south of the north property line of Jackson, as extended. In other words, the front end of the Chevrolet had almost crossed the intersection when the collision occurred. Skid marks made by the Buick extended southerly on Central 36 feet to the point of impact and 50 feet beyond that point, the car stopping on Central south of the intersection. The Chevrolet stopped 53 feet southwest of the point of impact, after passing through a fence. The front of the Buick struck the rear half of the right side of the Chevrolet. The plaintiff Huffman regained consciousness only after being taken to a hospital. The defendant later pleaded guilty in the justice's court to a violation of the right of way provision of the Vehicle Code.

The defendant testified under section 2055, Code of Civil Procedure that he approached this intersection at a speed of 55 to 60 miles an hour; that his view ahead and to the left was unobstructed; that he did not see the Chevrolet until he was 50 or 60 feet from the intersection; and that the Chevro-

let entered the intersection first. The plaintiff Huffman testified that as he approached this intersection he had the small sun visor on the inside of his car pulled down; that he could look under it with a clear view of the road ahead, but that the sun was in his eyes and interfered with his view when he looked to the right and beyond the visor; that before he entered the intersection he looked for traffic on Central Avenue and saw none; that he again looked and listened for traffic as he entered the intersection but saw and heard nothing; and that he never saw the Buick which collided with the car he was driving. There is evidence that there were no other cars on either of these roads at the time which could have had any bearing upon the accident.

At the conclusion of plaintiffs' case the defendant moved for a nonsuit on the ground that the evidence disclosed contributory negligence as a matter of law. This motion was granted, followed by a judgment of dismissal, from which the plaintiffs have appealed.

The appellants contend that Huffman had the right of way at this intersection; that he admittedly entered the intersection first; that a jury could reasonably infer that the Buick was at least 90 feet north of the intersection when the Chevrolet entered it; that it could reasonably infer from the skid marks that the speed of the Buick was greater than 60 miles an hour; that while Huffman was using a sun visor the extent to which his view was interfered with by the sun is left in doubt by the evidence; that there is evidence from which it may reasonably be inferred that his view was not entirely curtailed; that he looked and listened as he entered the intersection; that he took some precautions; that it may reasonably be inferred that he would have been justified in believing that he could safely cross the intersection even if he had seen the Buick; and that the question of contributory negligence was one of fact which should have been left to the jury.

The respondent contends that contributory negligence on the part of Huffman appears, as a matter of law, since the evidence conclusively shows that he drove into this intersection at a speed of 20 miles per hour which was in violation of the prima facie speed limit as then applicable to him as fixed by section 511(a) (4) of the Vehicle Code, since his view to the north on Central was blocked as effectively by the sun in his eyes as it would have been had a building intervened and obstructed his view. Based upon a portion of Huffman's

testimony, it is argued that his view to the north was thus obstructed since he could not see anything on Central, which was beyond a point 30 feet north of the intersection; that he never saw the approach of the respondent at any time; and that he knew that a 55-mile speed limit was applicable for southbound vehicles.

On the question before us that view of the evidence must be taken which is most favorable to the appellants. The evidence is that Huffman was traveling approximately 20 miles an hour, which is somewhat indefinite. If it be assumed that it discloses a speed in excess of the prima facie speed provided for in section 511 of the Vehicle Code, section 513 of that code expressly provides that it shall not be taken as establishing negligence as a matter of law, and must be considered and passed upon as a matter of fact. Moreover, it does not conclusively appear that the respondent was entitled to proceed at 55 miles an hour under the circumstances, or that Huffman should have known this. The basic speed law, section 511 of the Vehicle Code, was still applicable, the Chevrolet was approaching and entered the intersection first, and the respondent's view for some 1,000 feet was entirely unobstructed and unhampered by the sun.

While Huffman was led, on cross-examination, to state that when he got to the intersection he could see north on Central 20 or 30 feet, and possibly 50 feet, his entire testimony presents a somewhat different picture. While his testimony is that his view to the north was hampered by the sun when he looked beyond the edge of his visor he repeatedly stated that he was unable to give distances or angles. He stated that he looked to the north between the time he stopped and when he reached the intersection as far as he could see into the sun; that he could not see traffic on Central beyond the sun visor but did not know how far north he could see on Central; that he looked again when he got to the intersection and saw nothing; that "All the time I could look north through the angle of the sun visor, sure"; that he looked as far north as he could; that he did not know just how far north on Central he could see; that he did this at the intersection and also farther back; that he had no way of estimating the distance he could see; that "I wouldn't know the angle just exactly. It wouldn't be too far north"; that he was sure he could see some distance north; that he would have no way of judging the distance and no way of figuring it out; and that when he

stated that he could see 20 or 30 feet north he was just guessing and had no way of knowing.

The respondent relies particularly on the cases of *Roselle v. Beach,* 51 Cal.App.2d 579 [125 P.2d 77] ; *Meads v. Deener,* 128 Cal.App. 328 [17 P.2d 198] ; *Hatzakorzian v. Rucker-Fuller Desk Co.,* 197 Cal. 82 [239 P. 709, 41 A.L.R. 1027] ; and *Havens v. Loebel,* 103 Cal.App. 209 [284 P. 676]. All of these cases except the last involved contributory negligence, as a matter of fact. In *Havens v. Loebel,* it was held that a motion for a nonsuit should have been granted. In that case it appeared that the plaintiff could not see at all, that he proceeded into an intersection at 30 miles an hour, and that he hit the defendant's car on the rear left side. Not only is that case distinguishable on its facts, but it was decided before the adoption of the provision now found in section 513 of the Vehicle Code.

It appears that Huffman took some precautions for his own safety, that he looked to the north and saw no traffic, and the evidence as to how far he could see under the circumstances is indefinite. Many questions of fact necessarily appear, with respect to the conduct of Huffman and the position of the respondent at the time, as well as regarding the further issue of proximate cause. It might be inferred from the evidence that Huffman would have been justified in proceeding, even if he had seen the Buick, in the belief that the respondent was a sufficient distance away and that he would drive reasonably in view of the existing conditions. Under the circumstances which here appear, we are of the opinion that the controlling question was one of fact rather than one of law, and that the court erred in granting a nonsuit. (*Anthony v. Hobbie,* 25 Cal.2d 814 [155 P.2d 826] ; *Callaghy v. Mosle,* 66 Cal.App.2d 788 [153 P.2d 91] ; *Uribe v. McCorkle,* 63 Cal.App.2d 61 [146 P.2d 22] ; *Smith v. Pollard,* 121 Cal.App. 358 [8 P.2d 906].)

The appellants further contend that a nonsuit should not have been granted here because the last clear chance doctrine would have been available to them. While it is unnecessary to decide this question under the views above expressed we regard the applicability of this doctrine in this case as questionable. While some of the elements of that doctrine are present, it is doubtful whether any "clear chance" here appears after the respondent realized that a position of peril existed and that the other driver was unable to extricate him-

self. (*Folger* v. *Richfield Oil Corp.*, 80 Cal.App.2d 655 [182 P.2d 337]; *Johnson* v. *Southwestern Eng. Co.*, 41 Cal.App.2d 623 [107 P.2d 417]; *Lasch* v. *Edgar*, 46 Cal.App.2d 726 [116 P.2d 949]; *Dalley* v. *Williams*, 73 Cal.App.2d 427 [166 P.2d 595].)

The judgment is reversed and the cause remanded for a new trial.

Griffin, J., and Mussell, J., concurred.